THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* MARIANO ROSARIO MUÑOZ, Defendant and Appellant.

No. CR-65-312.     Decided April 5, 1966.

*Elizabeth Armstrong de Watlington* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Peter Ortiz, Assistant Solicitor General,* for The People.

PER CURIAM: Convicted by a court without a jury of the offense of robbery, appellant Mariano Rosario Muñoz was sentenced on November 6, 1963, by the Superior Court, Caguas Part, to serve from one to three years in the penitentiary.

On appeal he assigns that the trial court erred in believing that the evidence introduced by the prosecuting attorney established beyond a reasonable doubt the fact of the commission of the offense charged against appellant.

In support of this assignment he argues that Mr. Cádiz —the victim and only witness introduced by the People— "is 75 years old and does not wear glasses. At the trial when he was asked to identify the defendant he had to come close to him in order to do so"; that "he also testified that he was able to recognize the defendant at night, in a dark place, within the same distance he was unable to recognize the defendant at the trial"; that "In a period of three months and some days [the events occurred on July 27, 1963 and the identification in court was on November 6, 1963] the victim's eyesight changed from being able to make an identification in the dark at a certain distance, to not being able to identify that same person at the same distance in a clear place"; that "upon the court taking judicial notice of the laws of nature, in applying the presumption that things have happened according to the ordinary course of nature and the ordinary habits of life, it is not unreasonable to think that the court should doubt, for want of evidence to the contrary, that the victim could identify with certainty the defendant the day of the events when he could not do it afterwards in a more favorable situation. In this case explanatory evidence of such change in the victim's eyesight was lacking. It was incumbent upon the prosecuting attorney to do so."

On his part, the Solicitor General argues that ". . . the plaintiff merely seeks to make this Hon. Court alter the weighing of the evidence made by the trier of the facts." He set forth that the victim explained his difficulty in identifying appellant at the hearing of the case when he testified that due to the blows received from appellant when the latter stole a wallet from him containing $180, he is "brainless and my sight is blurred." The testimony of said victim covered the following phases of the case:

1. On July 27, 1963, at about eleven o'clock p.m. he was at the café Puerto Rico because he used "to drink coffee at night."

2. That the defendant was there and that he knows him.

3. That a short time before he left, the defendant and William Rodríguez—one of the witnesses for the defense—left the place.

4. He explained that "since the day that that occurred I am brainless and my sight is blurred," but he identified the defendant.

5. As to how the event occurred he explained that "they were closing and when they closed I crossed from the drugstore to the curb. When I reached the place where the advertisement of cars is I saw the individual who hid behind a bus belonging to Francisco Torres, I did not know he was watching me."

6. "When suddenly he hit me and I fell to the ground and with the sharp end of a radio I carried in my pocket I got this bruise."

7. "He put his hands into my pocket and took out the yellow wallet, in it . . . I had $180."

8. He never found the $180 "nor the individual. And I told him:—*You have taken my money and you have beaten me, but never mind, I know you—*". (Italics ours.)

9. Upon being asked by the prosecuting attorney if he knew the defendant, the victim explained: "Yes, sir, I know him. Every time I went to Santini's house to take care of cocks and that one, I knew him. Yes, that one, the one over there. Sure, sure, he is the one."

10. After the occurrence, he had not seen him again until the day of the trial.

11. Upon being questioned by the prosecuting attorney whether the face of a person can or cannot be seen in the place where he was assaulted, he answered "Yes, I saw it."

█ In view of the foregoing statement of facts to which the assignment in question refers, the presumption of continuity established by subsection 31 of § 102 of the Law of Evidence (32 L.P.R.A. § 1887(31)) is not applicable since it is sought to reverse the presumption, that is, it is sought to take as basis the subsequent situation of lack of eyesight to presume its existence at the time of the robbery. We re-

jected this contention in *People* v. *Alvarado*, 63 P.R.R. 623 (1944). The case of *Valiente* v. *Heirs of Fuentes*, 45 P.R.R. 600 (1933), contrary to what appellant alleges, did not decide that the aforesaid presumption was retrospective. What we decided in that case was that the presumption of sanity of a party was overcome by evidence of a subsequent advanced stage of progressive paresis. In the case at bar, the presumption was of good eyesight when the robbery occurred. The deterioration of his eyesight was explained by the victim, who testified that since the robbery he was "brainless and my sight is blurred."

■ We have examined in the record the evidence of appellant's alibi although none of the assignments has been based thereon. It is in part contradictory, vague and inaccurate, especially in the case of the principal witness of the defense as to the time at which the events occurred. When the prosecuting attorney asked this witness "Of course, you had to find Mariano before eleven thirty?" (the offense was committed at about eleven o'clock at night) he answered "Yes, sir; I told him that." We conclude therefore that the trial court was justified in not giving credit to all this evidence. Appellant did not show that said court acted with prejudice, passion or partiality in such weighing nor that the latter was erroneous. *Cf. People* v. *Luciano*, judgment of March 25, 1966.

By virtue thereof, the judgment rendered in this case by the Superior Court, Caguas Part, on November 6, 1963, will be affirmed.

Mr. Chief Justice Negrón Fernández did not participate herein.